By the Court.
Bosworth, J.
The judge, at the trial, correctly refused to dismiss the complaint. The defendant is a foreign corporation. The-cause of action, upon which this suit is brought, arose within the city and county of New York. The code gives this court jurisdiction of an action against a foreign corporation, “ upon any cause of action arising ” in the city of New York. (Sec. 33, sub. 3.) When a court of record has jurisdiction of the action, a voluntary appearance, without service of process, will give jurisdiction of the person.
The code, as amended in 1851, declares that, “ a voluntary. appearance of a party, is equivalent to a personal service of the summons upon him.” (§ 139.) Under the code, as'it was, at the time this action was commenced, the summons might be served by publication. An order to make service in that mode, could be obtained, upon affidavit, showing that a cause of action existed against the defendant, and that the defendant was a foreign corporation. The record shows that an order, that service of the summons, in this action, be made by publication, was granted on the 23d day of February, 1850. The record does not show, whether the publication was in fact made. But whether it was made or not, the court acquired jurisdiction of the person, by the defendant’s appearing and answering to the action.
There was no error in the charge of the judge, at the trial. The note for $650, was not a renewal of any part of the note for $875, which fell due on the 28th of November, 1850. That note was payable in the city of New York, and was, in fact, paid there, and taken up by the maker, or by some one in his behalf, at maturity. The defendant did not discount the note for $650, until after the note for $875 had been paid, and evidence of such payment • had been furnished to its president. The defendant agreed, in October, 1850, to renew the note of $875, for three-quarters of its amount. On the 16th of November, the note of $650, was taken to the Cabot bank, to be discounted as such renewed note. But instead of being then discounted, to furnish means, in part, to take up the note for $875, it was *429 left with the defendant under an arrangement, then made, “ that Hoyt should take up the note for $875, and on the president of the Cabot bank, receiving notice that it had been taken up, he was to discount the $650 note, and remit Mr. Hoyt the amount.
The president testified that when the $875 note became due, and he received notice of its having been taken care of, he sent Mr. Hoyt the $650 agreeably to the arrangement between him and Hoyt, of the 23d of October. There is no pretence that the discount of the note for $650 can be regarded as a renewal of a like amount of the note of $875. The latter note was paid to the holder when due. The defendant furnished no part of the moneys with which it was paid. After such payment was made, the bank discounted the $650 note, remitted the proceeds to Hoyt to use as he pleased, and the decision at the trial, that it was not a renewal of the note for $875, was correct.
But even if it had been discounted in renewal of, and the proceeds had been applied to take up the note for $875, the plaintiff would be entitled to recover.
On the 26th or 27th of November, and before it was discounted, the plaintiff, by letter, notified the defendant that his note of $400 was made, to be discounted for the plaintiff’s benefit, and that the proceeds were to be handed to him. That the note had been delivered by him to G. F. Butler for that purpose ; that the plaintiff had not received one cent of the proceeds, and some explanation by return mail was asked. To this letter the president replied on the 27th of November, and stated that the plaintiff's note was negotiated to the Cabot Bank on the 26th of September, by Sylvanus Hoyt. That he then negotiated a loan to a large amount, on the strength of this and other paper. The letter concludes thus : “ If Mr. Hoyt carries out the arrangement we have made with him, and we do not doubt that he will do so, that note of yours will be released as early as six days before its maturity, and he will be able to return it to you.”
The plaintiff had a right to understand from this letter, that the defendant’s only claim to his note grew out of the transaction of the 26th of September ; that it was held as security for a loan then negotiated on the strength of this and of other notes; *430 that some arrangement was, or had been made, by which, if it was carried out by Hoyt, the plaintiff’s note would be released six days before its maturity, from the claim and right to it, acquired by the defendant under the negotiation of the 26th of September.
The testimony shows the transaction of the 26th of September to have been this. On that doy, the note of $875 was discounted by the Cabot Bank, for S. Hoyt, on his leaving with it the plaintiff’s note and other notes, as collateral security. If the Cabot Bank had received the. plaintiff’s letter of the 26th of November, prior to discounting the note of $875, it cannot be pretended that the plaintiff’s note would have been valid in its hands, whether it had been actually discounted by the bank or taken as collateral for other notes discounted, if the facts stated in the letter should prove to be true. Neither could it, after such notice, make any new contract, on the security of the plaintiff’s note, which would enable it to enforce the note against the plaintiff. At all events, it could not, after receiving such notice and after the note for $875 was paid, by discounting a new note for $650, acquire any right to compel the plaintiff to pay his note to the bank. That discount was made after express notice to the defendant of the fraudulent misapplication of the plaintiff’s note. There was no error, therefore, in the charge that the plaintiff was entitled to recover the sum of $437 53, the amount of his note and interest.
The defendant complains that this part of the charge took from the jury the consideration of every question of fact. The judge was requested to charge the jury, “ that if the jury should find that Watson voluntarily paid Ms note of $400, that then the defendants would be entitled to recover, and requested his honor to submit that question to the jury.” His honor refused so to charge, or to submit the question of voluntary payment to the consideration of the jury. To which decision and refusal the defendant's counsel excepted.
The plaintiff had a right to presume that the Cabot Bank dealt truthfully with Mm, in making the reply of November 27. It ought not to be alleged against him that he had no right to presume that it would act honestly thereafter. He had a right to assume that if the note was or should be presented for pay *431 ment when due, it would he for the reason that the loan negotiated on the 26th of September, 1850, on the strength of that and other notes, had not been paid. If it had not been paid he would be legally bound to pay his note, and could be compelled to pay it, whether he withdrew his funds or not, from the bank where it was made payable.
The Gabot Bank had no right, after receiving payment of the loan made on the strength of this and other notes, to keep that fact concealed from the plaintiff, and, in fraud of his rights, present his note for payment at the bank where it was made payable and where he kept his funds ; and after thus obtaining payment, should not be permitted to say to the plaintiff, “You voluntarily allowed it to be paid, and therefore are without remedy.” It is a perfect answer to say, “ I assumed that you told the truth in your letter of the 27th of November ; and the facts you stated made me liable to pay my note, if the loan of the 26th of September should not be paid. If it was, in fact, paid before my note matured, I was not bound to withdraw my funds from the Mechanics’ Banking Association, or forbid its paying the note, to prevent you, in fraud of my rights, from presenting it and obtaining payment. It was paid in ignorance of material facts. It was a fraud in you to have concealed them, and a more palpable one to have obtained payment of the note by such means, after the debt, for securing the payment of which you took it, had been fully satisfied.” The judge was right in refusing to submit to the jury the question whether the payment of the plaintiff’s note was a voluntary payment. (9 Mass. R. 408, Garland v. Salem Bank; 6 Barn. & Cress. 671, Milnes v. Duncan.)
More diligence was exercised by the plaintiff in this case, to ascertain what claims the Cabot Bank had to enforce payment of his note, than was exercised by the plaintiff in the case of Goddard v. The Merchants' Bank (4 Comst. 147), before leaving his check with the notary to take up a draft supposed to have been drawn by the Canal Bank, at Cleveland, and which had been protested. In the latter case, the plaintiff volunteered to pay a protested draft, which he supposed to be genuine. The notary being out of his oEce when he called, Goddard did not see the draft, and, without seeing it, left his check to pay it, requesting that the notary, on his return, should send him the ■ *432 draft that day. All parties acted innocently. Yet it was held that there was not such negligence in paying the draft, before seeing it, as to bar his right to recover. The money was paid voluntarily, but under a mistake of material facts. In this case, the Cabot Bank, on being notified of the fraudulent misapplication of plaintiff’s note, informed the plaintiff that it was a bond fide holder of the note, and received it on the 26th of September, as security for a loan then made on the strength of that and other notes. It did not inform the plaintiff at what time that loan would become due. But the defendant and plaintiff both knew, that when that loan was satisfied the defendant would have no right to enforce payment of the note ; that after such notice, the bank could not make any new loan or discount on the credit of it, which would give any right to retain it, or impose on the plaintiff any obligation to pay it. The plaintiff did not, in fact, pay it. He gave no authority to pay it, except such as may be inferred in behalf of a bank depository to pay notes of its depositors made payable at their counter. There was no authority, express or implied, given to the defendant to present it for payment. The defendant presented it and obtained payment, knowing that such conduct was a fraud on the plaintiff, and that the plaintiff had no reason to anticipate such a result, if the loan which it was taken to secure, should be satisfied, before the note fell due.
The court did not err in charging the jury that the plaintiff was entitled to recover, and the judgment appealed from must be affirmed with costs.