McCunn, J.—(dissenting).
Equity relieves from mistake, except fault "be imputable to the party. Anciently, a distinction was drawn between mistakes in law and mistakes in fact; and, while mistakes in fact were always held a sufficient ground of relief, mistakes in law were regarded as necessarily implying blame, on the maxim “ ignorantia legis neminem excusat.” But this distinction, never resting on any solid foundation, and obviously productive of very great injustice, has, in latter times, been mitigated, if not repudiated by the courts, who, governed rather by considerations of substantial right, than by the compulsion of an arbitrary "and obsolete dogma, have adjusted their decisions to the equities of each particular instance. In the relation between attorney and client, the former is responsible only for gross error, and is excused, if he mistake on a doubtful point. Why, then, should a layman, who pretends to no technical knowledge of the law, be held to a responsibility- from which the men of the profession are exempt ? ' This court dispenses justice on the enlarged and liberal principles of equity jurisprudence ; and, wherever it is made apparent that a party will suffer from the consequences of an innocent mistake, I "take it we are bound to afford" him relief, if it can.be done without detriment to the rights of others who have equal claim to the consideration of the court.
Assuming the parties to have equal equities, the question here is, will the defendants be injured by the correction of the mistake in this case ?—a mistake about which there is no dispute, and from which, if not repaired, the plaintiffs will suffer loss. The payment to the sheriff, out of which the mistake arose, was not a voluntary payment, but a payment forced by the sheriff, under and by virtue of his attachment. This is clearly shown by the deputy sheriff who made the levy, and is also evidenced, by the sheriff’s receipt, given to Duncan, Sherman & Co., which exhibits that the payment of the money was made under protest. Now, these circumstances preclude all idea of the moneys being paid voluntarily, or that any. mutual mistake was made. Indeed, I look upon the receipt of *38 the sheriff as an equitable agreement by the plaintiffs in the attachment, to refund the money, if any mistake should thereafter be discovered.
I am fully sustained in my views in this respect by the case of De Mesnil v. Dakin, decided in the Queen’s bench, November 25, 1867, Lord Chief Justice Cogkbtjex delivering the opinion (Law Rep., 3 Q. B., 18). .
The rule of law is well settled, that, to prevent money being paid back to the payer, it must appear to be paid with a full knowledge that it ought not to be paid (8 Cow., 195 ; 5 Sandf., 423).
In this case it is conceded, and the court below, in its fifth finding of fact, so holds, that the money was paid by the plaintiffs in mistake, and in ignoranc'e of the fact that there was a mistake. This being so, the court will grant relief from a mistake, unless the party against whom the relief is sought, will sustain injury by correction of the mistake; which is not the case here.
It is true that the court below finds, in the twelfth finding of fact, that the plaintiffs had, during the life of the attachment, other property of Blagge & Co. in their hands, out of which they realized upwards of $2,000; but this finding is not sustained by any evidence in the case. The only proof on that point, is that of John B. Kitching, a witness for the plaintiffs, who says : • “I think it was ten bales of cotton and ten bags of wool,” which came to their hands, during the operation of the attachment and before this action was brought; and the same witness testifies that that shipment was made particularly against a certain specific draft, and could not be appropriated to any other purpose ; and he says that the balance of that shipment, after paying that specific draft, was handed over to the sheriff. Hay, further, he states, that all moneys and profits which came into the hands of Blagge & Co. (after paying said specific draft), were paid to the sheriff; How this is all the evidence in the case, as to property coming into the hands of Duncan, Sherman & Co., during the lifetime of the attachment or execution; and where the learned *39 judge found the proof upon which to base his twelfth finding, I cannot discover.
It is true, as I have said before, property came into the hands of the plaintiffs, during the lives of the execution and attachment; but this property was shipped against certain specific drafts, as I have shown, and could not legally be diverted to any other purpose. “A factor,” says Mr. Justice Story, in Ms work on “Agency” (§ 368), “is deemed for many purposes the owner of the property, especially where he has demands upon it for advances and debts.” The consignment of the property and the advances made thereon by the consignees upon the credit of the consignment, will vest in the consignees the right of property, and the' constructive possession also (Dows v. G-reene, 16 Barb., 72). Mr. Justice Monell, in the case of Shuttleworth v. Bruce, in a very able and learned opinion, states the fact that, where goods are shipped against a certain specific draft, the proceeds cannot be diverted to any other purpose; and such was the doctrine established in this court in the case of Lowry v. Stewart (3 Bosw., 605), which case was affirmed in the court of appeals (25 N. Y., 239). The same rule was applied in Parker v. City of Syracuse (31 N. Y., 376). Indeed, the authorities are so numerous that they have rendered the principle almost elementary. It is manifest, from the testimony in this case, that the goods of Blagge & Co., wMch came to the hands of the plaintiffs during the life of the attachment, were intended by the drawer of the draft to meet its payment in the hands of the drawees (the plaintiffs); and that the draft accompanying the bills of lading operated as an assignment for that purpose; and that the goods or the proceeds thereof could not be diverted by the plaintiffs to any object. This being so, then there is no evidence in the case that any property came into the hands of the plaintiffs belonging to Blagge & Co., during the life of the attachment, which could be applied, and which was not applied, to the benefit of the defendants ; consequently, they were not injured in any way by the negligence, delay, or laches, of the plaintiffs; *40 and will not be affected in any legal rights by a correction of the mistake, of which a remedy is sought in this action.
I think a new trial should be ordered.
Judgment affirmed.