Cyrus Hall McCormick, Respondent, *v.* The Pennsylvania Central Railroad Company, Appellant.

Where the court has jurisdiction of the subject-matter of an action, consent will confer jurisdiction of the person, and in case of a foreign corporation such consent may be expressed by appearing by attorney and answering generally in the action. (*Jones* v. *N. & N. Y. Transportation Co.*, 50 Barb., 193, criticised and limited.)

Plaintiff went with his baggage to defendant's depot in Philadelphia to take passage to Chicago; upon presenting his baggage, the baggage-master, in accordance with a rule of the defendant, declined to check until plaintiff had procured his passage tickets; he left his baggage to procure tickets; in his absence the baggage-master caused it to be placed in the baggage car, and on plaintiff's return with tickets, the baggage-master refused to give him the checks without his paying extra compensation on account of extra weight beyond what, by defendant's regulations, the tickets purchased would carry free. Plaintiff refused to pay the extra charge and demanded his baggage; this the baggage-master refused to deliver, for the reason that it was covered by other baggage, and in order to reach and return the trunks it would delay the train beyond the time fixed for starting. Plaintiff declined to take passage without his checks; his baggage was taken through to Chicago, and on the night after its arrival was destroyed by fire. The action was for the conversion of the baggage. *Held*, that defendant did not occupy the position of common carrier of the plaintiff, and could not avail itself of any of the rules which have been established as to the liabilities of common carriers of passengers. Also, that defendant was liable for the acts of the baggage-master, though that act should be held wrongful. It was further held by Folger, J.; Allen, J., concurring, that the question whether the reason given for the retention of

the baggage was a sufficient qualification of the refusal to deliver, to rebut the evidence of conversion furnished by such demand and refusal, was a question of fact for the jury. By CHURCH, Ch. J., and RAPALLO, J., that as matter of law there was no conversion. By GROVER and PECKHAM, JJ., that as matter of law there was a conversion.

In an action of trover interest is as necessary a part of a complete indemnity as the value itself, and in fixing the damages is no more in the discretion of the court.

Copies of original memoranda after proof of the facts therein contained may be read as a statement in detail of what the witness has testified.

In the absence of statutes varying the rule, jewelry and ornaments presented to a wife are her paraphernalia, and as such are subject to the control of her husband, and he alone can sue for an injury to or conversion of them.

Plaintiff and his wife were married in Illinois in 1858. By a statute of that State, passed February 21st, 1862, it was enacted that the property of any married woman belonging to her as her sole and separate property shall remain such, and that the property she acquires during coverture in good faith from any person, other than her husband, shall be and remain her sole and separate property. Prior to the passage of this act, plaintiff had purchased and presented to his wife various articles of wearing apparel, jewelry and ornaments. *Held*, that plaintiff was entitled to sue for an injury to or conversion thereof.

(Argued April 12, 1872; decided April 30, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, affirming a judgment in favor of plaintiff entered upon a verdict, and affirming an order denying a motion for a new trial.

The action was brought to recover the value of certain clothing, jewelry, etc., constituting the baggage of plaintiff, accompanying him while traveling with his wife, alleged by him to have been converted by defendant.

On the 11th of March, 1862, plaintiff, in company with his wife, presented the baggage in question at the passenger depot of defendant in Philadelphia, and desired to have the same checked from thence to Chicago. By a rule or regulation of the defendant, no passenger could rightfully demand that his baggage should be checked for transportation on their road until he should first pro cure and exhibit to the baggage-master passage tickets for

the distance he was entitled to be carried. The baggage-master demanded passage tickets as a condition to checking such baggage. Plaintiff left for the purpose of procuring them. In his absence the baggage-master caused said baggage to be placed in the baggage car of the defendants, and, on the plaintiff's return with his tickets for Chicago, refused to give checks for the baggage without extra compensation on account of its excess of weight; which the plaintiff refused to pay, and demanded his baggage or the checks therefor. The baggage-master refused to deliver either. The reason for the refusal to deliver the baggage was that it was covered by other baggage, and could not be reached and removed before the time for starting the train. Plaintiff declined to go upon that train. The baggage was carried safely to Chicago, and, no one being there to receive it, was stored in the usual place for unclaimed baggage, and upon the night succeeding its arrival was destroyed by fire.

Upon the trial certain memoranda or lists of the articles in the trunks were read. The facts in regard thereto are set forth in the opinion.

Plaintiff received an order upon the baggage-master at Pittsburgh to deliver the baggage without checks. A telegram had been sent to stop the baggage there. This order plaintiff delivered, upon his arrival at Pittsburgh, to a Mr. Richardson, an agent of defendant, and was informed that the telegram was received, but that in the hurry the baggage had not been stopped. This was objected to upon the ground that it was not in connection with any act as agent.

Other facts and questions presented appear in the opinion.

The court directed the jury to find a verdict for plaintiff, submitting to them simply the question of damages. The jury rendered a verdict for plaintiff for $10,660.61.

*Charles M. Da Costa* and *Ira Shafer* for the appellant. Residence when once established is presumed to continue until a change is proven. (2 Kent's Commentaries, 431 marginal, and cases cited in the notes; *Crawford* v. *Wilson*, 4

Barb., 504; *Jennison* v. *Hapgood*, 10 Pick., 77.) The question of jurisdiction was not waived by defendant appearing and answering. (*Cumberland Coal Co.* v. *Sherman*, 8 Abbott's Pr. R., 243; *Harriott* v. *N. J. R. R. and Transportation Co.*, 2 Hilt., 262; *Jones* v. *Norwich and N. Y. Trans. Co.*, 50 Barb., 193.) The defendant being a common carrier, an appropriation of the goods to its own use must be shown to sustain action. (*Whitney* v. *Wilson*, 30 Barb., 276; *Tolano* v. *National Steam Nav. Co.*, 5 Robertson, 318; *Devereaux* v. *Barclay*, 2 Barn. & Ald., 702; *Stevenson* v. *Hart*, 4 Bing., 476; *Nelson* v. *Whitmore*, 1 Richardson [S. C.], 323.) The demand and refusal were not conclusive proof of conversion, but only evidence tending to show the conversion. (*Rook* v. *Midland R. R. Co.*, 14 Eng. Law and Eq., 178; *Wild* v. *Walters*, 32 id., 422; *Kelsey* v. *Griswold*, 6 Barb., 443; *Andrews* v. *Shattuck*, 32 id., 397; *Dunlap* v. *Hunting*, 2 Den., 643; *Johnson* v. *Couillard*, 4 Allen, 446; *Robinson* v. *Burleigh*, 5 N. H., 225, 228; *Ludley* v. *Downing*, 2 Carter [Ind.], 419; *Nelson* v. *Whitmore, supra.*) Where a qualification is attached to a refusal, the question is whether such qualification be a reasonable one or not. (*Ganton* v. *Nurse*, 2 Brod. & Bing., 447; *Fouldes* v. *Willoughby*, 8 Mes. & W., 540; *Hayward* v. *Seaward*, 1 Moore & Scott, 459; *Wilde* v. *Waters*, 32 Eng. Law and Eq., 422; *Debrt* v. *Childs*, 5 Stew. & Port. [Ala.], 383; *St. John* v. *O'Connell*, 7 Port., 466; *Mount* v. *Derrick*, 5 Hill, 456; *Thompson* v. *Sixpenny Savings Bank*, 5 Bosw., 311; *McEntee* v. *N. J. Steamboat Co.*, 45 N. Y., 34.) Whether the refusal under the circumstances constituted conversion or not, was a question of fact for the jury. (*Lockwood* v. *Bull*, 1 Cow., 330, 333; *Jessup* v. *Miller*, 1 Keyes, 329; *Thompson* v. *Sixpenny Savings Bank*, 5 Bosw., 311, and cases there referred to; *Watt* v. *Potter*, 2 Mason, 80.) Conversion is waived by any subsequent acts inconsistent with it or ratifying the wrongful act. (*Wells* v. *Kelsey*, 15 Abb., 53; *Ball* v. *Liney*, 44 Barb., 504, 514, 515; *Brewer* v. *Gregory*, 2 Barn. & Cress., 310; *Lythgoe* v. *Vernon*, 5 Hurl. & N., 179; *Rotch* v. *Howes*, 12

Pick., 139 ; *Hewes* v. *Parkman*, 20 Pick., 90 ; *Firemen's Ins. Co.* v. *Cochran*, 27 Ala., 228 ; *Bell* v. *Cummings*, 3 Sneed. [Tenn.], 286.) Whether the facts constitute a waiver, is a question for the jury. (*Lucas* v. *Trumbull*, 15 Gray, 309.) Defendant had a right to make reasonable rules in reference to transportation. (*Hibbard* v. *N. Y. and Erie Railway Co.*, 15 N. Y., 455 ; *Commonwealth* v. *Powers*, 7 Metc., 596.) If the conduct of defendant's agent was not justified by the rules, defendant is not liable. (*Hibbard* v. *N. Y. and Erie R. R. Co.*, 15 N. Y., 455, 461–467–469.) A common carrier is not responsible beyond the limits of his own line, except by special contract. (*Van Santvoord* v. *St. Johns*, 6 Hill, 157 ; *McDonald* v. *Western R. R. Co.*, 34 N. Y., 497 ; *Root* v. *Great Western R. R. Co.*, 45 N. Y., 524, 529, 530 ; *Maghee* v. *Camden and Amboy R. R. Co.*, 45 N. Y., 514, 518 ; *Northern R. R. Co.* v. *Fitchburg R. R. Co.*, 6 Allen, 254 ; *Notting* v. *Conn. R. R. Co.*, 1 Gray, 502 ; *Pendergrast* v. *Adams Express Co.*, 101 Mass., 120 ; *Elmore* v. *Naugatuck R. R. Co.*, 23 Conn., 473 ; *Naugatuck R. R. Co.* v. *Waterbury Button Co.*, 24 id., 468 ; *Jenneson* v. *Camden and Amboy R. R. and Trans. Co.*, 4 Law Reg., 234 ; *Rome R. R. Co.* v. *Sullivan*, 25 Ga., 228 ; *Withers* v. *Macon and Western R. R. Co.*, 35 id., 273 ; *Fowles* v. *Great Western R. R. Co.*, 16 Eng. Law and Eq., 531.) The contract must be governed by the law of Pennsylvania. (*Schwartzenburger* v. *Penn. R. R. Co.*, 45 Penn., 208.) On the arrival of the trunks at Chicago, defendant became mere warehousemen, and were not liable for the destruction of the trunks by fire. (*Fisk* v. *Newton*, 1 Den., 45 ; *Rowland* v. *Milne*, 2 Hilt., 150 ; *Goold* v. *Chapin*, 20 N. Y., 259 ; *Roth* v. *Buffalo and State Line R. R. Co.*, 34 N. Y., 548 ; *Thomas* v. *Boston and Providence R. R. Co.*, 10 Met., 472 ; *Norway Plains Co.* v. *Boston and Maine R. R. Co.*, 1 Gray, 263 ; *Cincinnati and Chicago R. R. Co.* v. *McCool*, 26 Ind., 140.) The allowance of interest was a matter of discretion with the jury. (*Black* v. *C. and A. R. R. Co.*, 45 Barb., 40 ; *Walrath* v. *Redfield*, 18 N. Y., 547 ; *Matthews* v. *Menadger*, 2 McLean, 145 ; *Lincoln* v. *Claflin*, 7

Wal., 132.)  What is reasonable baggage, is a question of fact for the jury.  (*Rawson* v. *Penn. R. R. Co.*, 2 Abb. [N. S.], 220; *Merrill* v. *Grinnell*, 30 N. Y., 594.)  The declarations of Richardson were no part of the *res gestæ*, and were inadmissible.  (Greenleaf on Evi., § 113; Story on Agency, § 134; *Penn. R. R. Co.* v. *Buck*, 57 Penn., 339; *Pratt* v. *Ogdensburgh and Lake Champlain R. R. Co.*, 102 Mass., 557.)  The wife alone could sue for her separate property.  (*Rawson* v. *Penn. R. R. Co.*, 2 Abb. [N. S.], 221.)  The exceptive words "from any person other than her husband" apply only in cases where the rights of creditors were involved.  (*Lockwood* v. *Cullen*, 4 Robertson, 133; *Wilbur* v. *Friedenburg*, 52 Barb., 478; *Jaycox* v. *Caldwell*, 37 How. Pr. R., 247; *Kelly* v. *Campbell*, 38 N. Y., 29.)  The rule is the same under the laws of Illinois.  (*Manny* v. *Recksford*, 44 Ill., 129; *Sweeny* v. *Danrom*, 47 id., 450, 455.)

*E. M. Stoughton* and *Samuel Hand* for the respondent.

FOLGER, J.  1st. Had the court below jurisdiction of the action and of the parties, so that it could render the judgment appealed from?

We will assume that the plaintiff was at no time a resident of this State, and that the learned justice at circuit erred in ruling, that as a fact established he was a resident.  We do not however determine those questions, as we can otherwise dispose of the defendant's objection of want of jurisdiction.

The cause of action was of that nature, that although it arose in another State, the court below had jurisdiction of the subject-matter of the action.  In this respect the case differs from *Harriott* v. *New Jer. Trans. & R. R. Co.*, 2 Hilton, 262, cited to us by the defendant.  There the Court of Common Pleas of the city and county of New York had no jurisdiction of the subject-matter, being confined by the Code, § 33, in such case, to a cause of action arising in this State.

The defendant in the case at bar employed attorneys who, as officers of the court, served notice of the defendant's appear-

ance, and put in and served an answer generally in the action, and raised no objection until after issue was joined and the trial commenced, that the court had not jurisdiction of the action and of the parties. In this respect the case differs from *Cumberland Coal Co.* v. *Sherman*, 8 Abbott Pr. Rep., 243, where the foreign corporation defendant appeared specially, and only for the purpose of moving to set aside the summons, etc., for the want of jurisdiction over it. *Jones* v. *Norwich & N. Y. Trans. Co.* (50 Barb., 193) does hold that the objection may be made after answer, and even on appeal after judgment. Such holding was not necessary to the decision of that case, as jurisdiction was there retained by virtue of a statute other than the Code of Procedure. Nor do we agree in the *dictum* there expressed. We hold that where the court has the jurisdiction of the subject-matter or cause of action, that consent may confer jurisdiction of the person; and that such consent may be expressed by a foreign corporation, by appearing by attorney and answering generally in the action. Though it seems to have been thought that a foreign corporation could not at common law have been sued here, it was at the same time suggested that it would be competent for it to constitute an attorney to appear and plead in an action. (*In re McQueen* v. *The Middletown Manuf. Co.*, 16 Johns., 5.) Since that time it has been so often held that a voluntary appearance confers jurisdiction of the person, and the rule seems so reasonable in itself, that we have no hesitation in adopting it. In *Faulkner* v. *The Del. & Rar. Can. Co.* (1 Den., 441), Beardsley, J., after quoting Taney, C. J., to the effect that a corporation, though it must live and have its being in the State of its creation, yet it may be recognized and contract in another, says: "hence it may prosecute and defend suits out of the State in which it was created." (And see *Paulding* v. *Hud. Manufacturing Co.*, 2 E. D. Smith, 38; *Watson* v. *Cabot Bank*, 5 Sandf., 423, the judgment in which was affirmed in this court, 4 Duer, 606, note; *Dart* v. *Farmers' Bk.*, 27 Barb., 337.)

2d. Was there a conversion of the property by the defendant so as to warrant this action?

The defendant claims that there is no conversion unless there was an appropriation of the goods to its own use, and puts it in part upon the ground that the defendant was a common carrier. In the first place, the defendant does not in this action hold the place of a common carrier of plaintiff and his goods. If there is cause of action, as at present before us, it is because the plaintiff would not consent to take on with the defendant the relation of passenger with his baggage. He refused to do so, and demanded return to him of his goods. His trunks and their contents were then no longer to be treated in the transaction as baggage of a passenger in the hands of the defendant as a common carrier of him and them, but as property of one in the possession of another, delivery of which to the owner had been demanded and been refused. Again, a common carrier is not always excused in an action for conversion, because he has not in fact applied to his own use the goods committed to him in his public capacity. (*Dewell* v. *Moxon*, 1 Taunt., 391; *Anon.*, 2 Salk., 655.) It is doubtless correct to say as a general proposition, that demand and refusal are not conclusive evidence of conversion. There may be such a state of facts shown in opposition as fully to rebut. But such may be the case also, as that demand and refusal shall be enough. If one have the power to deliver or to retain the article demanded, a demand and a refusal to deliver is sufficient evidence of a conversion. (*Bristol* v. *Burt*, 7 Johns., 254.) A refusal however, may be accompanied with such reasonable qualification as to furnish an excuse for retention, and then there is no conversion shown merely by proof of demand and refusal. (*McEntee* v. *N. J. Steamboat Co.*, 45 N. Y., 34.) In the case before us, the qualification was, that the prearranged moment for the starting of this fast express through passenger train was so right upon the defendant, that to take the measures needed to get at in the baggage crate the trunks of the plaintiff, and removing them therefrom, to put them again in his possession,

would take so long, as to derange the time table, insure delay, and incur the hazard of accident and damage. As to this, the business of the defendant as a common carrier of persons is an element in the case. We are not prepared to say that, under the usual circumstances of one taking passage with ordinary baggage, and at the last moment for his own convenience changing his purpose, it would not be a good excuse for a refusal to deliver it, so as to repel the conclusion of a conversion of the goods, that the delay needed therefor would throw out of gear the arrangements for the running of the train, and thus risk be incurred to the passengers and property carried. There would be to. be sure, the physical power to delay the train and to overhaul the baggage and to find and deliver to him his own. But there would be on the other hand, the duty to others, of heeding all salutary and necessary arrangements for a safe journey for them. Does not the presence of this fact in any case, presenting the duty of a railroad company to be thoughtful of the safety of the passengers under its care, put a weighty consideration in the scale over against the evidence of conversion of baggage furnished by the simple fact of a demand and refusal to deliver it?

There is however, an important circumstance in this case, which is to be borne in mind in the consideration of this question. It was one of the regulations of the defendant that no baggage should be checked until the passenger tendering it should have bought his ticket. On the plaintiff offering his trunks for checks, he was required by the baggage-man in obedience to this rule, to first provide his tickets. During his absence for them, the baggage-man weighed the trunks, put checks upon them and placed them in the baggage crate, and upon the top of them was placed other baggage. After this was done the plaintiff returned with his tickets. The baggage agent then enforced upon the plaintiff another rule of the defendant. Inasmuch as the weight of the trunks was apparently more than the number of tickets bought would entitle the passengers going

under them to carry as ordinary baggage, there was demanded of the plaintiff payment of a charge for the excess. It was the enforcement of this rule that caused the plaintiff to yield his purpose of travel by that train and to demand possession of his baggage again. Had the baggage-man adhered to the rule not to check and load baggage until tickets were bought, a rule of which he had demanded observance from the plaintiff, the trunks might have been beside the car, and surrender of possession to the plaintiff would have been easy. Had the man in the first instance, before requiring the purchase of tickets, asked for the extra charge for overweight, and had the plaintiff declined, then return to him of his property could have been easily made. No doubt but that the defendant had the right to neglect observance of any or all of these rules, they being made for its' convenience and protection. But it had no right to first enforce one upon the plaintiff and then itself disregard it, and inflict the inconvenient result of vacillation upon him. It insisted that he should act up to it. While he was so doing, it neglected it, and in that neglect so placed his baggage, as that when it came to demand of him the observance of another rule of which he had not been theretofore notified, and he refused and demanded his property, the practical difficulty arose of the inability to meet the changed aspect of affairs.

It does not appear but that he would have refused to pay the extra charge had it been made before he was sent to procure his tickets, and thus his trunks never have gone out of reach. It is said that the baggage-master could not know that there was an excess of baggage until the number of tickets was apparent to him. He did know however, that apparently there was but one passenger with his wife, to whom it belonged, and if there was to be on his part, an enforcement of all the rules of the company before the plaintiff was to be allowed to take his place as passenger carrying his trunks with him, it was this agent's duty to keep matters in such a state as that it should be possible to meet the contingency of a refusal on the part of the plaintiff to comply,

and of the consequent necessity of surrendering to him his property. This deviation by the defendant from the rule which the plaintiff was obeying, may have been the cause of the inability of the defendant to comply with his demand for the delivery of his property.

Again ; the plaintiff after payment of the charge for extra baggage was required of him, first demanded the checks for his trunks ; and it was not until the refusal of them that he made demand for the delivery of the trunks themselves. So that the defendant had the option of giving the checks or giving the trunks ; and if the circumstances which it had brought about made the latter impracticable, the former might have been done. Thus there is another element in the inquiry as to the reasonableness of the excuse. And was then, that inability stated as an excuse for not making delivery a reasonable qualification of the refusal so to do?

It is not for the court, in this case, to pass upon this as a question of law, whether there was or was not a conversion. Whether or not the qualification of the refusal to deliver was reasonable in this case, is a question of fact for the consideration of the jury under proper instructions from the judge. (*Mount* v. *Derick*, 5 Hill, 455 ; *Watt* v. *Potter*, 2 Mason, 80 ; *Alexander* v. *Southey*, 5 Barn. & Ald., 247 ; *Delano* v. *Curtis*, 7 Allen, 470.)

And in this view the testimony in the case, as to an arrangement between the plaintiff and Thompson, the president of the defendant, for the retention and delivery of the trunks to the plaintiff at Pittsburgh, and what took place between the plaintiff and the defendant's agent at Pittsburgh as to the trunks having passed on to Chicago, and the arrangement for him to receive them there, was proper to have been submitted to the jury as bearing on the question of a conversion. (*Hayward* v. *Seward*, 1 Moore & Scott, 459.) The defendant is understood to claim that this testimony tended to show what should be termed a waiver, (*Lucas* v. *Trumbull*, 15 Gray, 306 ; *Trayner* v. *Johnson* [Head], 1 Tenn, 51) ; or a ratification of the act of the defendant in

sending forward the baggage (*Hewes* v. *Parkman*, 20 Pick., 90); or an affirmation of the act, and a treating the defendant as the agent of the plaintiff in doing it, (*Brewer* v. *Sparrow*, 7 B. & C., 310); or as a satisfaction for the wrongful act (id; *Lythgoe* v. *Vernon*, 5 H. & N., 179); or as testimony tending to rebut the evidence of conversion furnished by the demand and refusal, and so going to show that there was no conversion by the defendant to its own use of the property of the plaintiff.

As the authorities are in this State, the last is the better view of it. See *Hanmer* v. *Wilsey* (17 Wend., 91); *Otis* v. *Jones*, 21 id., 394), which hold that a mere tender will not bar a tort, nor take away a right to a full compensation in damages; and *Reynolds* v. *Shuler* (5 Cow., 323), where it is laid down that trover lies for the conversion of a chattel, though it be restored before suit brought, the restoration going only in mitigation of damages.

The testimony should have been submitted to the jury on the issue of a conversion. And see *Carver* v. *Nichols* (10 Gray, 369); 7 Allen, *supra*.

And the learned justice erred at the circuit in taking these questions from the jury, and passing upon them as matters of law for his determination. It follows that there must be a new trial.

There are some questions made in the case which it may be well to pass upon now, to facilitate another trial if one should be had.

1st. We think that the defendant is liable for the act of the baggage-man at its depot at Philadelphia, though that act should be held wrongful. He was acting within the scope of his authority in requiring checks for the baggage, and in demanding payment of the charge for extra baggage, and in putting it into the car before payment thereof, and in refusing delivery of it for the reason given by him. This makes the defendant responsible for his act. (*Higgins* v. *The Watervliet Turnpike and R. R. Co.*, 46 N. Y., 23.)

2d. We do not think that the defendant can avail itself in

this action of any of the rules which it invoked which have been laid down as to the liability of common carriers. As before remarked, the cause of action if any does not arise from any fixed relation of the plaintiff to the defendant, as a passenger with his baggage carried or to be carried by it. He expressly arrested the commencement of that relation and refused to enter into it, and for the express purpose of preventing it, demanded back his baggage. From that moment the defendant, if this action is maintainable at all, did not hold his trunks as common carriers of him and them, but as wrong-doers, tortiously detaining them and converting them to its own use.

3d. The plaintiff if he maintains his case, this being an action of trover, will be entitled to interest from the time of the conversion. (*Hyde* v. *Stone*, 7 Wend., 354.) In the action of trover, interest is as necessary a part of a complete indemnity as the value itself, and in fixing the damages, is not any more in the discretion of the jury than the value. (*Andrews* v. *Durant*, 18 N. Y., 496.)

4th. The memoranda received in evidence were not original entries; they were copies of originals. A copy of an entry made by himself or by any other person, may be used by a witness to refresh recollection (*Marcly* v. *Shultz*, 29 N. Y., 346), and the original memorandum may be read in evidence, if made at or near the time when a material fact to which it relates occurred, and the witness producing it can swear that it was made correctly, though he cannot then recollect the facts contained in it. (*Halsey* v. *Sinsabaugh*, 15 N. Y., 485.) But a copy of a memorandum cannot be read as evidence of the contents of it. (29 N. Y., *supra.*) Though the testimony as given in the appeal book, is confused as to the various memoranda produced on the trial, it is evident that the memoranda first made by the plaintiff and those helping him were destroyed, and that the papers exhibited to the witnesses were prepared from them ; but it does not appear that they were literally copies. It seems that in preparing the lists of articles in the different lost trunks, the memories of

those engaged, principally that of the wife of the plaintiff, were set at work, and as articles were brought to recollection from the bills of the purchase of them and otherwise, they were set down upon paper; different pieces of paper it would appear. When this process was completed, the contents of those papers were transcribed in gross. These were the completed and corrected memoranda, and substantially the original memoranda. It was as to these that the plaintiff's wife testified, that she knew all the articles named in them were in the trunks. We do not understand that the memoranda were read to the jury as evidence of themselves of what were the contents of the lost trunks, but only as a statement on paper in detail, of what this witness had testified were the articles contained in the trunks. In this view the memoranda were competent.

5th. The testimony as to the declarations of Richardson or other person, an agent of the defendant at Pittsburgh, was objected to as not accompanying any act of his as such agent. But this is a mistake of fact.

The plaintiff presented to him an order for the trunks, which was addressed to Richardson, and it was in answer to this order and excusing himself from compliance with it that he made the statement testified to. It was in the performance of his duty as agent and as part of the *res gesta.* It was not error to admit the statement.

6th. The objection to the testimony upon the value of the brooch given by the wife of the plaintiff, and the testimony, as to value given by Miss Merrick, that they were not shown to be qualified to speak as to value, was well taken. The foundation had not been laid by any proof of the knowledge of the witnesses upon the subject. The value of the articles was sufficiently shown by other testimony, so that the defendant was not perhaps, injured by this testimony, and we should not feel called upon to regard the admission of it as fatal, were it the only point taken.

7th. A question of some importance, is that raised by the objection to proof as to the necklace and other personal orna-

ments of the plaintiff's wife; and by the request to charge that the plaintiff could not recover in this action for them, or for her wearing apparel.

It appeared that the plaintiff and his wife were married in 1858, in Illinois, and that the diamonds, jewelry and ornaments were presents made there by the husband to the wife, and that the wearing apparel was bought for her after marriage, for her especial use, by the husband or with his money. It is claimed that all these are her own property, which the plaintiff cannot control; and that for a conversion of it, he cannot maintain an action. This action was commenced in 1867, but the alleged conversion was in March, 1862.

In the absence of statutes, varying the law, chattels of this kind, got for the use of the wife, would be deemed her *paraphernalia*. (2 Blk. Com., 435.)

As such they were subject to the control of the husband during his lifetime, and he alone could sue for an injury to, or a conversion of them. The defendant claims that this character of them has been changed by statute. It relies upon the statute of Illinois, passed 21st February, 1861, and which was given in evidence on the trial. That act was passed after the marriage of the plaintiff, and so far as appears, after the purchase of all the chattels in question. It enacts that the property of any married woman, belonging to her as her sole and separate property, shall remain such. But these chattels were not then the sole and separate property of Mrs. McCormick. The statute further enacts that the property which any married woman acquires during coverture, in good faith from any person other than her husband, shall be and remain her sole and separate property. But this property was not thus acquired by her after her marriage. As this property was all bought and put into the possession of the wife before she was a resident of this State and while she was a resident of Illinois, we must rest upon the law of that State, as it is shown to us to be, by the production in evidence of the statute above referred to. In this view, *Rawson* v. *Penn. R. R. Co.*, lately decided by the Commission of Appeals and

cited to us by the appellant, is not in point; as that rests entirely upon the statute law of this State. We see no reason why the plaintiff is not entitled to sue for an injury to or a conversion of this property claimed by the defendant to belong to his wife as her sole and separate property.

But for the error in not submitting to the jury the question of whether there was a conversion of the property by the defendant, as affected by the reasonableness of the excuse made for not delivering it on the plaintiff's demand, the judgment appealed from should be reversed and a new trial ordered, with costs to abide the event of the action.

All concur upon questions discussed, save on question of conversion.

ALLEN, J., concurs with opinion.

CHURCH, Ch. J., and RAPALLO, J., are of opinion that, as matter of law, there was no conversion.

GROVER and PECKHAM, JJ., are of opinion that, as matter of law, there was a conversion and they dissent from result.

For reversal, CHURCH, Ch. J., FOLGER, ALLEN and RAPALLO, JJ.

For affirmance, GROVER and PECKHAM, JJ.

Judgment reversed.