CYRUS HALL McCORMICK, Respondent, *v.* THE PENNSYL-
VANIA CENTRAL RAILROAD COMPANY, Appellant.

Plaintiff went to defendant's depot in Philadelphia with nine trunks, to
take passage with his family to Chicago, he applied to the baggage-
master for checks for his baggage, but was informed that he must first
procure tickets; while he was absent for that purpose, the baggage-
master caused his baggage to be weighed, checked and put into the
baggage-car. Upon the return of plaintiff with his tickets, he was
informed, that under the rules of the company, the tickets were not
sufficient to transfer all his baggage, for the excess a charge was made
which plaintiff refused to pay; he demanded his checks, these were
refused unless the extra charge was paid; he then demanded his trunks,
but the baggage-master refused to deliver them, for the reason that they
were covered with other baggage and could not be reached before the
time for starting the train. Plaintiff declined to go on the train, his
baggage went through to Chicago, and the night after its arrival, the
depot was struck and set on fire by lightning, and it, with the baggage,
except two trunks and some loose articles, was destroyed. The trial
court found that there was no reasonable excuse for the refusal to
restore the baggage to plaintiff. In an action for the conversion of the
baggage, *held,* that the facts authorized a finding of a conversion at
Philadelphia.

*McCormick* v. *P. C. R. R. Co.* (49 N. Y., 303), distinguished.

It appeared that after plaintiff had determined not to take the train, he
called upon defendant's president and requested him to cause the bag-
gage to be taken off at Pittsburg, as he intended to stop there, the
president gave the necessary directions and the baggage-master tele-
graphed to Pittsburg, but the baggage was not stopped. The baggage-
master also gave to plaintiff an order for the delivery of the baggage at
Pittsburg without checks. During the same day plaintiff requested
the baggage-master at Philadelphia, to countermand the order to stop
the baggage, as he had concluded to go through to Chicago without
stopping. Plaintiff took a train the same evening; on arriving at
Pittsburg he presented the order and was informed that the baggage
had gone on, he expressed his gratification and took an order from the
baggage-master to the one at Chicago directing the delivery of the
baggage without checks; upon his arrival at Chicago he claimed and
took possession of the baggage saved. *Held* (FOLGER, J., dissenting),
that by the acts of plaintiff subsequent to the conversion, he resumed
control of his baggage in the condition it was on board the train, and
elected to hold defendant as carrier; that, as such, it was not liable for
the loss, and for the original conversion was only liable in nominal
damages.

(Argued February 26, 1880; decided March 19, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of plaintiff, entered upon the report of a referee.

This action was brought for the alleged conversion of certain trunks and their contents, the baggage of plaintiff and his family. The case is reported upon a former appeal in 49 N. Y., 303.

The facts appear sufficiently in the opinion.

*Charles M. Da Costa*, for appellant. There was no conversion at Philadelphia of the trunks in question. (*Fouldes* v. *Willoughby*, 8 Mees. & W., 540; *Heald* v. *Carey*, 11 Com. B. [73 Eng. Com. Law], 993; *Burroughs* v. *Bayne*, 5 Hurls. & N., 305, 308, 309; *Simmons* v. *Lillystone*, 8 Exchcq., 431; *Fowler* v. *Hollins*, Eng. L. R. [7 Q. B.], 616, 630; id. [7 E. & I. App. Cas.], 754, 757, 775; *Folano* v. *Nat. Steam Nav. Co.*, 5 Robt., 318, 326; *Powell* v. *Hoyland*, 6 Exchq., 67, 72; *Alexander* v. *Southey*, 5 B. & Ald., 247; *Holbrook* v. *Wight*, 24 Wend., 169; *Rogers* v. *Weir*, 34 N. Y., 463; *Mount* v. *Derrick*, 5 Hill, 455; 2 Phillips' Evidence, 226; *Whitney* v. *Slauson*, 30 Barb., 278.) Even if the action of defendant's agent at Philadelphia constituted a technical conversion, such conversion was waived by plaintiff's acts. (49 N. Y., 313; *Brewer* v. *Sparrow*, 7 Barn. & Cress., 310; *Lythgol* v. *Vernon*, 5 Hurls. & Norm., 179; *Hayward* v. *Seaward*, 1 Moore & Scott, 459; *Hiort* v. *The London and Northwestern Railway Co.*, 48 L. J. Rep. [N. S.], 545; *Hewes* v. *Parkman*, 20 Pick., 90; *Carnes* v. *Nichols*, 10 Gray, 369; *Schwarzenberger* v. *Pennsylvania Central R. R. Co.*, 45 Penn. Stat., 208; *Root* v. *The Great Western R. R. Co.*, 45 N. Y., 524; *Babcock* v. *The Lake Shore, etc., R. R. Co.*, 49 id., 491; *Rawson* v. *Holland*, 59 id., 611; *Pratt* v. *Railway Co.*, 95 U. S., 43; *Fiske* v. *Newton*, 1 Denio, 45; *Roland* v. *Miln*, 2 Hilton, 150; *Goold* v. *Chapin*, 20 N. Y., 259; *Roth* v. *Buffalo and State Line Co.*, 34 id., 548; *Thomas* v. *Boston and Prov. R. R. Co.*, 10

Metc., 472; *Norway Plains Co.* v. *Boston and Maine R. R. Co.*, 1 Gray, 264; *Cincinnati and Chicago R. R. Co.* v. *McCool*, 26 Ind., 140; *Proudfit* v. *Montfiore*, Law Rep. [2 Q. B.], 511; *The Circassian*, 3 Benedict, 398; *The Oriental*, 7 Moore P. C. C., 398, 411; *The Onward*, Law Rep., [4 Adm. & Ex.], 38.)

*W. A. Beach*, for respondent.  Plaintiff's demand of his property, and defendant's refusal to deliver it, were, *prima facie*, a conversion.  (49 N. Y., 310, 311, 312; *Ball* v. *Liney*, 48 id., 12.)  The arrangement made between plaintiff and defendant for the return of the property at Pittsburg was not a remission or waiver by plaintiff of any right or claim, nor did the acceptance of a portion of it recovered after the fire so operate.  (49 N. Y., 313, 314; *McKnight* v. *Dunlap*, 5 N. Y., 537; *Barber* v. *Rose*, 5 Hill, 77, 78; *Bowman* v. *Teal*, 23 Wend., 309; *Willoughby* v. *Backhouse*, 4 Dowl. & Ryl., 539.)

Church, Ch. J.  On the former appeal (49 N. Y., 303), it was held error in the trial court, to charge the jury, as matter of law; that the transaction at Philadelphia constituted a conversion, but the members of the court differed in the reasons for their judgment.  Two of them thought that it was a question of fact, to be submitted to the jury; and the only opinion delivered was to this effect:  Two were of opinion that in law there was no conversion, and the other two who sat in the case, held that the charge was right.  The opinion by Folger, J., presented the considerations on both sides pertinent to a determination of the point as a question of fact, and there is nothing objectionable in it.

The last trial was before a judge without a jury, and upon the same evidence given upon the first trial; nearly all the facts are undisputed.  It is scarcely claimed that there was an actual conversion, nor that, but for the demand and refusal to deliver the trunks, an action predicated upon a conversion could be maintained.  There was no assertion of dominion

over the property, nor any act inconsistent with the right of the plaintiff; and unless one or other of these things exist, there is no conversion. (*Fouldes* v. *Willoughby*, 8 Mees. & W., 540; *Heald* v. *Carey*, 73 Eng. Com. Law, 976; L. R. [7 Q. B.], 616.)

"It has never yet been held that the single act of removing a chattel, independent of any claim over it either in favor of the person himself or any one else, amounts to a conversion of the chattel." (Addison on Torts, 309.)

There was, however, a demand and refusal, and in general this constitutes a conversion; or, as is sometimes expressed, is evidence of a conversion. This is based on the principle that every man has an absolute right, at all times, to the control and disposal of his own property, and an interference with that right is wrongful, and subjects the offender to an action as for conversion. There are exceptions to the application of this rule. The refusal may be qualified and a reasonable excuse may exist for not complying with the demand. (*McEntee* v. *The New Jersey Steamboat Co.*, 45 N. Y., 34, and cases cited), or it may be impossible to comply, without fault of the defendant. (2 Phillips' Ev., 226; *Whitney* v. *Slauson*, 30 Barb., 278.)

In such cases the law is not so unreasonable as to hold a party liable upon the ground of conversion. In order to determine what rule should be applied to this case, it seems necessary to refer briefly to the facts and the findings.

The plaintiff being desirous of taking passage for himself and family from Philadelphia to Chicago went to defendant's depot and applied to its baggage-master at the former place for checks for his baggage and was informed that he must first procure tickets. He left for the purpose of procuring tickets, and during his absence the baggage-master caused the baggage to be weighed, checked, and put into the baggage-car. There were nine trunks and upon the return of the plaintiff he was informed that the number of tickets was not sufficient according to the rules of the company to transport all his baggage. It appears that each passenger was enti-

tled to only eighty pounds of baggage and that there was an excess of 200 pounds, for which there was a charge of about eight dollars. The plaintiff after some controversy refused to pay the amount and demanded his checks, which were refused, without payment of the extra charge, and he then demanded his trunks, the delivery of which was refused for. the reason that they were covered with other baggage and could not be reached before the time for starting the train. The plaintiff declined to go on that train, which was on the eleventh of March. He then found the president of the company and requested him to cause his baggage to be taken off at Pittsburg as he intended to stop there, and the president gave the necessary directions to have this done.

The baggage-master did send a telegram to Pittsburg, but the trial judge found that in the hurry at that place the baggage was not stopped. The evidence tended to show that the telegram was not received in time. The baggage-master also gave to the plaintiff a written order directing the baggage-master at Pittsburg to deliver the baggage without checks.

It is also proved by uncontradicted evidence, although not found, that during the day the plaintiff requested the baggage-master at Philadelphia to countermand the order to have the baggage stopped at Pittsburg, as he had changed his mind about stopping there, and desired it to go through to Chicago. It does not appear whether this request was acted on by the baggage-master, but the baggage did go on. The plaintiff took the train in the evening, and upon arriving at Pittsburg presented the written order for his baggage to the agent, who informed him that the baggage had gone on to Chicago, upon which the plaintiff expressed his gratification, and took an order from the agent at Pittsburg, indorsed upon the order to him, to the agent at Chicago, to deliver the baggage to the plaintiff at Chicago, without checks. The plaintiff arrived in Chicago on the fourteenth, having laid over a train, but it does not appear where. The trunks arrived safely at Chicago, and no one claiming them they

were deposited in the usual place for keeping unclaimed baggage, and the night before the arrival of the plaintiff the depot was burned, by an accidental fire caused by lightning, and most of the trunks, with their contents, were destroyed. Two of the plaintiff's trunks, and a few loose articles belonging to him, were saved, and upon his arrival he claimed and took possession of them. There was no finding that the reason for not delivering the baggage was not true. It was assumed that it was impracticable to deliver it at the time it was demanded, for the reason stated, but the trial court found there was no reasonable excuse for the refusal to deliver up the baggage. This decision was placed upon the ground that the baggage-master was in fault for the condition of the baggage, by the wrongful act of putting it on board before the plaintiff produced his tickets, in violation of the rule of the defendant, and that it was the duty of the baggage-master to have retained the baggage " in such a state as that it should be possible to meet the contingency of a refusal on the part to the plaintiff to comply." . From this finding, the legal conclusion was arrived at that there was a conversion. There is no finding but that the rule requiring payment for extra baggage was a permanent rule of the company, and a usual one in passenger traffic, and that it was reasonable.

It is argued on behalf of the defendant that the act of placing the baggage in the car was not wrongful ; that the baggage-master acted in furtherance of the expressed purpose of the plaintiff to have his baggage transported to Chicago ; that he was justified in relying upon the word of the plaintiff that he would procure tickets, and in inferring that he would either produce a sufficient number of tickets to carry his baggage, or comply with the customary rule of the company and pay the extra charge ; and at most that it was only a waiver of a strict compliance with a rule made by the company for its own protection, of which the plaintiff could not complain ; and while the right of the plaintiff to demand and have his baggage was conceded, yet that this right could not be exercised at the hazard of throwing the

trains out of gear, and threatening injury and damage to others. When the case was here before I was impressed with the correctness of these views, and hence that a conversion could not be predicated upon the facts stated, and I have been unable to rid myself entirely of this conviction by the able argument of the learned counsel for the plaintiff upon this appeal.

But passing this point, and assuming that a conversion was established by the transactions at Philadelphia, the question then presents itself what effect if any the subsequent acts of the parties should have upon the case. If there was a conversion it must be conceded that it was of the most technical and shadowy character, and lacked every substantial element of reality. The trunks were forwarded to the destination desired by the plaintiff without any claim of property in or dominion over them, except as a carrier on the part of the defendant, and they were at all times held subject to the absolute order and control of the plaintiff. The plaintiff immediately sought the president, and directed that the trunks should be left at Pittsburg, and obtained an order for their delivery to him at that place. He countermanded that order and directed that they be sent to Chicago, and received an order that they be delivered to him at the latter place. All these directions were assented to and complied with by the agents of the defendant.

By these acts the plaintiff resumed control of his baggage and occupied the relation of passenger to the defendant as carrier. From that time the defendant's responsibility to him and his baggage was that of a carrier. He voluntarily assumed that relation. There was no condition or qualification about it. The suggestion that this was upon condition that he should actually receive the baggage irrespective of whether it was lost through the fault of the defendant has no foundation in any fact or circumstance of the case. If any of this property had been stolen it must have been laid as the property of the plaintiff.

If it had been destroyed by negligence at Chicago the

company owning the line at that end would have been liable to the plaintiff. He treated it as his property and constructively took possession of it and the trunks not burned he claimed and received as his own at Chicago, without a suggestion and probably without a thought of a right of action for the remainder. Whatever mistake or wrong was committed by the baggage-master in putting the trunks on board before he knew whether the plaintiff would comply with the rules of the company must, by the subsequent acts of the plaintiff either be regarded as waived or that the plaintiff voluntarily consented to receive a return of the property in the condition it was in on board the train and resumed in that way the relation of passenger, and in either view his cause of action was gone and at most could only be maintained for nominal damages. In *Hiort* v. *The London and Northwestern Railway Co.* (48 L. J. Rep. [N. S.], 545), the defendant was a bailee of goods and delivered them on the order of G. an unauthorized person. Afterwards the plaintiff gave an order to T. by whom it was indorsed to G. who lodged it with the defendant. Being unable to obtain the price of the goods from T. the plaintiff sued the defendant for the conversion, claiming the full value. The judges were divided as to whether the judgment should be for the defendant or for the plaintiff for the nominal damages, but all agreed that the plaintiff was not entitled to the value. The sensible remarks of one of the judges are worthy of repetition. He said : "But it is said there is some magic in the term conversion and that the unauthorized delivery was a conversion of the goods. The plaintiffs have not received their goods nor the value of them, and consequently the damages they are entitled to obtain in respect of the conversion is the full price of the goods. This argument seems to me specious rather than sound. Though the action of conversion has been surrounded by technicalities which have in some cases worked injustice, the tendency of the courts at the present time is to treat it in what may be called a common sense way. As in other actions for torts the injured person

Opinion of the Court, per Church, Ch. J.

can only recover the damages flowing from the wrong, so the courts have had a tendency to hold the same in actions of trover." Assignees in bankruptcy having once affirmed the acts of a person who wrongfully sold the property cannot afterward treat him as a wrong-doer and maintain trover. (*Bremen* v. *Gregory*, 7 Barn. & Cress., 310.) An offer to return property after a demand and refusal, and before an action has been commenced, has been held no conversion. (*Haywood* v. *Seward*, 1 Moore & Scott, 459.) Alderson, J., said: " A demand and refusal are only evidence of a conversion. The refusal in this case was canceled by the offer subsequently made, but before the issuing of the writ to restore the boiler. The offer to return was so soon after the refusal that it might well have been regarded as qualifying the refusal." In *Cornes* v. *Nichols* (10 Gray, 369) it was held that a person who has illegally detained goods which the owner has since agreed to accept and send for, is not liable for their destruction by fire without his fault after the owner had a reasonable time to remove them. The court, in that case, say if reasonable time had not intervened to remove the mahogany before the fire, "the defendant might possibly have been liable for its full value." I am inclined to think that if the plaintiff voluntarily agreed to accept the property at the place where it was he assumed the risk of accidents, for which the defendant was not in fault. But this qualification, if sound, can only apply to a case where such a condition is expressed or implied, and cannot aid the plaintiff in this case because he agreed to accept the property on the train as his personal baggage without qualification, and had opportunity to control it before it reached its destination, or to take possession of it upon its arrival at Chicago ; and if he deemed it necessary he might, as he did to order it stopped at Pittsburg, employ the telegraph. It is sufficient that he resumed the character of owner in the condition in which the property was, and elected to hold the defendant as carrier ; and he cannot, after a misfortune, change his position.

The authorities cited by the counsel for the plaintiff are not strictly applicable.  *Barber* v. *Rose* (5 Hill, 76) merely held that after a failure to perform work under a special contract, the employment of plaintiff after such failure to finish the work did not amount to a waiver of damages for the non-performance.  In *McKnight* v. *Dunlop* (5 N. Y., 537) it was held that damages by a failure to perform a contract, to deliver 5,000 bushels of malt, were not waived nor released by a subsequent contract for the delivery of 3,000 bushels ; and the general doctrine is laid down, " that whenever a right of action has once vested in a party, it can only be destroyed by a release under seal or by the receipt of something in satisfaction of the wrong done."  But when the action is trover for the conversion of property, the return and acceptance of the property has always been effective in mitigation of damages, even though the technical right of action may still exist, and when the only evidence of conversion is a demand and refusal it seems reasonable that the wrong may be waived by a delivery and acceptance of the property, although there are expressions in the books to the contrary.  It cannot be very material in this case to determine this question.  In *Bowman* v. *Teall* (23 Wend., 306), it was held that the acceptance of goods in a damaged state was not a bar to an action for damages occasioned by the previous negligence of a carrier in respect to the goods but might be given in mitigation of damages. In this case if the views before expressed are correct the plaintiff must be regarded as accepting the property by resuming dominion and control over it before the loss, and hence if an action could be maintained at all it would only be for nominal damages.  We have been referred to no authority which would justify a recovery for the value of the property under the circumstances developed in this case. The facts of the countermand and taking the order from the Pittsburg agents for the delivery of the trunks at Chicago are not found, but as they were proved by undisputed evidence and are material, it was error in law to refuse to find

them on request, and these facts may be treated as in the case. The loss was a severe one but it was caused by an act which is denominated an act of God, for which no one is responsible, and I have never been able to see any propriety in reason or in law for visiting the calamity on the defendant. It is proper to say that a majority of the court are of the opinion that the finding that there was a conversion at Philadelphia was justified, but that the plaintiff resumed control of his baggage and can recover only nominal damages, and all concur except FOLGER, J., in that branch of the opinion.

The judgment should be reversed and a new trial granted, costs to abide the result.

RAPALLO, J., concurs ; MILLER, J., concurs in result ; ANDREWS, EARL and DANFORTH, JJ., concur on ground of conversion and subsequent resumption and for nominal damages only ; FOLGER, J., dissents, stating his grounds therefor as follows :

I perceive nothing now in the case which I did not find there when I wrote the opinion reported in 49 New York,— I mean nothing upon the main question in the case. As the trier of the facts has now found that there was not a reasonable excuse for the refusal to yield up to the plaintiff his property on his demand, it would follow in accordance with my views then given that there was a conversion and liability of the defendant. It is said that there was a resumption of the property by the plaintiff. Not so. There was a willingness shown by him to resume it ; but the defendant never gave it all back to him. I therefore dissent from the views of the opinion just read by the chief judge.

There is a minor question which was not in the case before ; but as the result reached by the prevailing opinion makes it needless to consider it, I express no view as to it.

Judgment reversed.