### GARR, adm'r, &c. *vs.* BRIGHT and others.

There is nothing in the constitution of the United States to deprive the courts of one of the states, of the jurisdiction which they previously possessed, as to suits against a state, brought by citizens of another state, or by citizens or subjects of a foreign state.

The courts of the United States have not even a concurrent jurisdiction with the state courts of chancery, in suits brought by individuals against a state.

The principle upon which the court of chancery assumes jurisdiction, in a suit to which a sovereign state is a party defendant, is not for the purpose of compelling such state to perform any decree which may be made against it; but to enable the state to appear and protect its rights, if it has any, in the suit.

Principles upon which the attorney general is made a party defendant, where the state is interested.

Persons cannot be made parties defendants, in the court of chancery, on the ground of their being the agents of a party interested, where no specific relief is asked against them; and where the bill contains no allegation that they acted as such agents in relation to the transaction in question, or that they had any interest in, or connection with, the subject matter of the litigation.

Although costs, in equity, are in the discretion of the court, except in the case of a complainant's dismissing his own bill, or suffering it to be dismissed for want of prosecution, as a general rule the party succeeding upon the merits is entitled to costs.

In general, where the bill is dismissed upon a general demurrer thereto, for want of equity, the defendant is entitled to costs.

The provisions of the revised statutes in relation to costs, at law, in actions brought by executors and administrators, do not apply to suits in the court of chancery.

The principle, that costs in equity are in the discretion of the court, applies to suits brought by executors or administrators, in the court of chancery, as well as to suits brought by other persons. And *it seems*, the rule is the same at law; in cases where the costs are not regulated by statute.

Where a bill is filed by an executor or administrator, which bill, upon its face, is not sustainable, that is, where the matter in dispute does not depend upon a question of fact but of law, and where such suit is brought against a stranger to the estate of the decedent, and not for the mere purpose of obtaining the direction of the court as to the manner in which the complainant shall execute his trust, or to settle the conflicting claims of the several persons interested in the estate, the general rules of the court relative to costs in suits brought by other persons will be applied.

THIS was an appeal from a decretal order of the vice chancellor of the first circuit, allowing the demurrer of the defen-

dants, Bright & Palmer; and dismissing the complainant's bill, as to them, with costs. The bill was filed by the complainant, as the administrator of Colin Mitchell, deceased, against the trustees of The Apalachicola Land Company, and the receivers of The Morris Canal and Banking Company; to establish the complainant's claim to four hundred and seventy three shares of the stock of the Apalachicola Land Company, and to obtain a transfer to him of the said stock, or to compel the trustees to give to him new certificates for the same; or that the complainant might be permitted to redeem the said stock, if the hypothecation thereof to the Morris Canal and Banking Company should be declared to have been legal and valid. The respondents, Bright & Palmer, who were described in the prayer for the subpœna and injunction, as agents of the state of Indiana, were also made defendants. But no specific relief was asked against them; nor was there any allegation in the bill that they were agents of the state of Indiana, in relation to the stock in question, or that they had any interest in, or connection with the subject matter of the litigation. The allegations in the bill were substantially as follows: In November, 1835, Mitchell, Vermilyea, and others, who were the proprietors of about twelve hundred thousand acres of Florida lands, agreed to convert them into a transferrible stock, consisting of shares of 500 acres each; and to form an association, of the holders and assignees of such shares, by the name of the Apalachicola Land Company. The association was formed accordingly, and the proprietors of the land conveyed the same to Louis McLane and others, as trustees, in trust, to sell the land and to divide the proceeds thereof among the several stockholders of the association, or their assigns, in proportion to their several shares in such stock. Mitchell had contracted with Vermilyea, to purchase of him a large number of shares in the stock of the association, to be paid for in the bonds of the Morris Canal and Banking Company, payable in four equal annual instalments, with interest at the rate of five per cent per annum, to be paid semi-annually. And to enable Mitchell to fulfil that contract, he applied to the Morris Canal and Banking Company, who agreed to loan him

their bond for $142,000, payable to him or his assigns, dated in March, 1836, and payable in two, three, four and five years, in equal instalments, with semi-annual interest, at the rate of five per cent per annum.  For which he was to give his four bonds of the same date, to Louis McLane, as the trustee for the Morris Canal and Banking Company, and for the same amount, payable in two, three, four, and five years, with interest thereon semi-annually, at the rate of seven per cent per annum.  And to secure the payment of the said four bonds, Mitchell was to make an absolute transfer to the Morris Canal and Banking Company, of four hundred and seventy-three shares, and a fraction, of the stock of the Apalachicola Land Company, upon the books of that association.  This arrangement was carried into effect; except that the Morris Canal and Banking Company substituted their four bonds instead of one, for the $142,000.  Mitchell was lost, at sea, in the summer of 1837, and no one administered upon his property here until about seven years afterwards.  In December, 1837, McLane assigned the bonds of Mitchell to the Morris Canal and Banking Company.  About two years afterwards, that company transferred the four hundred and seventy-three shares of Apalachicola Land Company stock, so pledged for the payment of Mitchell's bonds, to the president of the State Bank of Indiana, in payment of a debt due from the Morris Canal and Banking Company to the state of Indiana; and he subsequently transferred them to that state.  The complainant insisted, in his bill, that if the transaction between Mitchell and the Morris Canal and Banking Company was to be considered as having taken place in the state of New-Jersey, where that company was incorporated, the bonds of Mitchell, and the agreement upon which the transaction was founded, were void on the ground of usury, the legal rate of interest in New-Jersey being but six per cent; and that if it should be considered a New-York transaction, it was a violation of the restraining law of this state, and also a violation of the charter of the company.  The respondents put in a general demurrer to the bill for want of equity; and also upon the ground that the heirs at law of Mitchell were not made parties.  And upon

Garr *v.* Bright.

the argument of the demurrer, the objection was also made, *ore tenus,* that the state of Indiana was a necessary party.

*W. C. Noyes,* for appellant.   As to the questions arising upon the demurrer.

I. The state of Indiana could not be made a party defendant. Where a state is made defendant, the state courts cannot exercise jurisdiction.   A sovereign state is only sueable by virtue of the express compact to submit itself to the federal courts. (*Per Bronson, J. in Delafield* v. *State of Illinois, in court of errors,* 2 *Hill,* 169.   *See also* 1 *Kent's Com.* 297, *note* (c).)

II. The state of Indiana being out of the jurisdiction of the court, that is a sufficient reason for its not being made a party. When a person, who ought to be made a party, is out of the jurisdiction of the court, that fact being stated in the bill, and admitted by the defendants, or proved at the hearing, is, in most cases, a sufficient reason for not bringing him before the court ; and the court will proceed without him against the other parties, as far as circumstances will permit. (*Mitford,* 4*th ed.* 164. *Att'y Gen'l, ex rel. University of Glasgow,* v. *Baliol College and others, Mitford,* 3*d ed.* 25, *note* (g), 4*th ed.* 32, *note* (u).   *See Story's Eq. Pl.* §§ 78, 87.   *Calvert on Parties,* 64.)   If a party, who might otherwise be considered as material, by being made a party to the bill, would, from the limited nature of its (the court's) authority, oust the court of its jurisdiction, I should strain hard to give relief as between the parties before the court.   (*Per Story, J. in West* v. *Randall,* 2 *Mason,* 196.)

III. The state of Indiana was virtually represented in the suit by its agents, Bright and Palmer.   When the claimant of any particular interest is substantially represented, his absence is excused.   (*Calvert on Parties,* 58.   *See Story's Eq. Pl.* § 142 *et seq.*   *Id.* 222.)

IV. Bright and Palmer were properly made parties, inasmuch as the bill prayed that they might be restrained by injunction from transferring the stock in question as agents of the state

Persons against whom an injunction is prayed, are necessary parties. (*Calvert on Parties*, 90.)

V. The complainant should have been allowed to amend without paying the costs of the demurrer, because, 1. His error, (if it was one) of not making the state a party, is excusable on account of the uncertainty of the law on that subject, and the opinion expressed by Mr. Justice Bronson, in 2 *Hill*, 169. 2. The objection was not stated in the demurrer, but was taken ore tenus. If it had been pointed out by the demurrer, the complainant would perhaps have amended under the 44th rule. (*See Garlick* v. *Strong*, 3 *Paige*, 440. *Story's Eq. Pl.* §§ 464, 541.) 3. Because the complainant sues in auter droit. Though the general rule is, that there can be no appeal upon the question of costs ; yet if a party appeals, having a substantial ground of appeal, and brings in the question of costs along with it, he may proceed with respect to the question of costs, though he does not succeed on the substantial ground of appeal. (1 *Barbour's Ch. Pr.* 376.)

VI. The order for the dismissal of the bill should have reserved the right to the complainant to amend. It should have been to dismiss, unless the complainant should amend, &c. and not have merely given leave to amend. (*Story's Eq. Pl.* § 541.) This distinction is important, as the vice chancellor, in denying the motion, subsequently made, for leave to amend in that and other particulars, founded his opinion upon the form of the order.

VII. The order allowing the demurrer should not have given costs against the complainant, who sued in auter droit. A plaintiff, suing in auter droit, is not responsible for costs, unless under special circumstances. (*Goodrich* v. *Pendleton*, 3 *John. Ch. R.* 520.) In general, an executor or administrator who brings a suit in this court in good faith, on a probable ground of right, will not be charged with costs. (*See also* 4 *Hill*, 57. *Manny* v. *Philips*, 1 *Paige*, 472.)

The appeal from the order denying the motion is well taken for the following reasons :

I. The vice chancellor should have granted the motion, and

permitted the complainant to make the amendments that he asked for. Whether the amendments proposed would entirely remove all cause of demurrer, was a question that did not properly arise upon the motion, and ought not to have been prejudged. The reason assigned by the vice chancellor, that the laws of Florida, to which the complainant in his first proposed amendment, refers, should have been set out, is founded upon the assumption that those laws are statute laws; which is not alleged in the amendment, and is not the fact.

II. The vice chancellor should, at the least, have granted the motion in part, by giving leave to make the state of Indiana a party. It is no answer to this point, that leave was already given in the order made, on the allowance of Bright and Palmer's demurrer. The order applied only as to them, and not as to the other defendants.

*L. Hoyt,* for respondents.

I. The bill does not show any equities, in favor of the complainant, against any of the defendants.

II. The bill shows no equities in favor of the estate of Colin Mitchell.

III. The bonds of Colin Mitchell were made in the city of New-York. Reserving seven per cent interest, was therefore not usury

IV. But if they are to be considered as having been made in New-Jersey, and they reserve a greater interest than is allowed by the law of that state, then the law is not set forth with sufficient particularity to entitle complainant to refer to or prove it.

V. By the law of New-Jersey, a party coming into a court of equity for relief must do equity. And by the law of this state, as it existed when the transactions stated in the bill took place, (1836,) a party could not compel a discovery of the usury, by the oath of the defendant, unless he should do equity by bringing into court the money, or the security, that he had received from the defendants by reason of the alleged usurious transaction. (*Miller* v. *Ford, Sax. Ch. Rep.* 358. *Livingston* v. *Harris,* 3 *Paige,* 528. *Cole* v. *Savage,* 10 *Id.* 583.)

VI. The transaction stated in the bill is not within the object

Garr v. Bright.

or letter of the statute, known as the " restraining act." 1. It is cne entirely disconnected with the ordinary business of banking, and the keeping of an office of discount and deposit; which was what the statute intended to restrain ; and 2. Taking the bonds of Mitchell was not a discounting of notes ; and the issuing the bonds of the Morris Canal was not an issuing of notes, or other evidence of debt, intended to circulate as money. 3. If the transaction was a violation of the restraining law, there is nothing in the bill calling for the aid, or authorizing the interference, of a court of equity ; a court of law having all the power necessary to punish such violation.

VII. Whatever violation of the law there was, Colin Mitchell was a party to ; and his representatives cannot come into a court of equity to be relieved against its consequences. (*De Groot* v. *Van Duzer*, 20 *Wend.* 393.)

VIII. No such interest is shown in the defendants, Bright and Palmer, as authorized the complainants to make them parties defendants.

IX. The state of Indiana, the real party in interest, is not before the court.

THE CHANCELLOR. It is not necessary, upon this appeal, to examine the question at length as to the right of the complainant, in such a suit as this, to make the state of Indiana a party defendant. No question on this subject arises under the constitution of the United States. The eleventh article of the amendments to that constitution, declares that the judicial power of the United States shall not extend to any suit in law or equity, commenced or prosecuted against one of the United States, by citizens of another state, or by citizens or subjects of any foreign state. The courts of the United States have not, therefore, even a concurrent jurisdiction in such a case. And there is nothing in that constitution to deprive the court of chancery of this state, of all the jurisdiction on the subject which it possessed before that constitution was adopted. It is true this court has not the power, absolutely, to compel a sovereign state to perform a decree, which may be made against

such state. And if the state of Indiana should be made a party defendant in this suit, it would not be with any expectation of compelling it to transfer to the complainant the stock standing in its name upon the books of the Apalachicola Land Company. But it would be to enable the state to appear and protect its right, if it has any, as one of the cestuis que trust, in the proceeds of the lands of that association; which lands are vested in some of the other defendants in this suit as trustees for the stockholders; so that such trustees may be protected from the risk and expense of a double litigation, with those who have conflicting claims upon the trust fund. And, upon the same principle, the attorney general would be made a party to the suit, if the people of this state claimed an interest as one of the cestuis que trust, and the complainant was asking similar relief against the trustees, as the claimant of the same interest; although the state itself cannot be sued in its own courts, directly. It is also the ordinary practice to make the attorney general a party to a foreclosure suit, where the people of this state have a subsequent lien upon the mortgaged premises, by judgment or otherwise; so as to give to the purchaser, under the decree of foreclosure, a perfect title to the premises; discharged of the lien of the state. And where any other state or government has a similar lien, I see no valid objection to making it a party defendant, for the same purpose.

But even if the state of Indiana could not have been made a party defendant in the present suit, it does not follow that the complainant had the right to make Bright & Palmer defendants, as the mere agents of the state; especially when it was not pretended that the stock claimed by him was standing in their names, or that they were charged with any special duty in relation to such stock, by the laws of the state of Indiana, or otherwise. The demurrer of the appellants was therefore properly allowed by the vice chancellor. Not upon the objection made ore tenus, that the state of Indiana was a necessary party to the suit, for that was a matter to be urged by the other defendants, if by any one, but upon the ground that these two defendants were not proper parties. In other words, there was no equity

in the bill, so far as they were concerned. The amendments asked for by the complainant, therefore, could not have removed the objection as to them. And the order of the vice chancellor was right, in directing an absolute dismissal of the bill, so far as they were concerned.

The only remaining question is, whether the decretal order of the vice chancellor was right as to costs. Although the costs are in the discretion of the court, in suits in equity, except in the case of a complainant's dismissing his own bill, or suffering it to be dismissed for want of prosecution, as a general rule, the party succeeding upon the merits is entitled to costs. And this is almost uniformly the case where the bill is dismissed upon a general demurrer thereto, for want of equity. For the complainant, by one of Lord Bacon's orders, was to be charged with costs in all cases, where it should appear, upon the hearing, that he had not probable cause for instituting the suit. And a complainant can hardly be said to have probable cause for making a person a defendant, in a chancery suit, when upon the face of the bill it is evident the complainant had no equitable claim whatever against such party ; and had no right to make him a defendant in the suit, for any purpose.

The statutory provisions in relation to costs in actions at law, brought by executors and administrators as such, do not apply to suits in this court. The principle, therefore, that costs in equity, are in the discretion of the court, applies to suits brought by executors or administrators in this court, as well as to suits brought by other persons. Indeed, the rule is the same at law, in cases where the costs are not regulated by statute. And, therefore, where an administrator had probable cause for bringing an action against an heir for a bond debt of the ancestor to the plaintiff's intestate, but subsequently discovered that the estate had been conveyed, he was permitted to discontinue his action without costs; upon condition that he should not bring another suit without leave of the court. (*Burnet, adm'r,* v. *Cock,* 4 *Bur. Rep.* 1927.) But the same court, in a previous case, where no such ground of excuse appeared, refused to permit an executor to discontinue without costs. (*Harris, ex'r,* v.

Garr v. Bright.

*Jones,* 4 *Idem,* 1451.) And in the case of *Haydon* v. *Norton,* (*Cooke's Ca. of Pr.* 79,) where an executor brought a bill against a member of parliament, which was demurred to, and the plaintiff thereupon moved for leave to discontinue, it was debated whether he, being an executor, should pay costs on such discontinuance; and it was decided that the costs must be paid, it being the fault of the executor himself.

Where a bill is filed, by an executor or administrator, which bill upon its face is not sustainable, that is, where the matter in dispute does not depend upon a question of fact, but one of law, and consequently which is as much within the knowledge of the complainant as of his testator or intestate, and such suit is brought against a stranger to the estate, and not for the mere purpose of obtaining the direction of the court, as to the manner of the complainant's executing his trust, or to settle the conflicting claims of the several persons interested in the estate, I see no good reason for departing from the general rule of this court relative to costs in suits brought by other persons. And in the case of *Frazer* v. *Moore,* in 1720, (*Bunb. Rep.* 63, *and* 4 *Burn. Eccl. Law,* 320, *S. C.,*) the court of exchequer acted upon that principle, and required the administrator to pay costs upon th allowance of a demurrer to his bill. The court also said, in that case, that such was the constant course in equity. Certainly the exemption from liability for costs, by executors or administrators, suing in this court in behalf of their testators or intestates, ought not to extend to cases where the want of equity, as against a party who has been improperly made a defendant in the suit, is so palpable that counsel of ordinary intelligence could not reasonably have supposed such suit would eventually be sustained against such defendant. And such appears to be this case, so far as relates to the defendants Bright & Palmer; as to whom there does not appear to be a single allegation in the complainant's bill, showing that they are in any way connected with the subject matter of this suit, or that they have any power or authority to interfere with the stock standing in the name of the state of Indiana, upon the books of The Apalachicola Land Company. It is not even stated that they, or

Christie *v.* Bogardus.

either of them, are the general or special agents of the state of Indiana, in relation to that stock, or as to any other matter. All that appears on the subject, is in the prayers for process ; where Bright & Palmer are called the agents of the state of Indiana. But even there, the nature and object of such agency, or to what subject it relates, is not specified. The bill, therefore, did not furnish a plausible pretence for making the respondents parties to this suit ; even if it would have been proper to make a general agent of the state of Indiana, having the control of this stock, a party, upon the ground that the state itself could not be reached, because it was not within the jurisdiction of this court, so as to be amenable to its process.

The decretal orders appealed from must, therefore, be affirmed, with costs.